In the Matter of American Broadcasting Companies, Inc., Respondent, v Lillian Roberts, as Industrial Commissioner of the Department of Labor of the State of New York, et al., Appellants.

First Department, April 28, 1983

### APPEARANCES OF COUNSEL

*Howard B. Friedland* of counsel (*Henriette Frieder* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for appellants.

*Jesse Climenko* of counsel (*Peter D. Stergios* and *John K. Mara* with him on the brief; *Shea & Gould,* attorneys), for respondent.

### OPINION OF THE COURT

Kupferman, J.

The Commissioner of Labor and the Industrial Board of Appeals (IBA) appeal from a judgment rendered in a CPLR article 78 proceeding which annulled a notice of Labor Law violation and order to comply with subdivision 3 of section 162 of the Labor Law,[1] as modified by the IBA, which the

---

1. "§ 162. Time allowed for meals * * *

"3. Every person employed for a period or shift starting before noon and continuing later than seven o'clock in the evening shall be allowed an additional meal period of at least twenty minutes between five and seven o'clock in the evening."

Commissioner had issued to petitioner-respondent, American Broadcasting Companies, Inc. (ABC). We affirm.

Respondent ABC employs members of the National Association of Broadcasting Employees and Technicians (NABET) as editors, engineers, and couriers, pursuant to the terms of a collective bargaining agreement entered into with NABET which is the exclusive bargaining agent of such employees nationwide.

Under the terms of that agreement, detailed provisions, tailored to meet the exigencies of the telecommunications industry, insure that ABC's employees are afforded adequate rest periods and meal breaks. (See NABET-ABC master agreement 1977-1981 [still in effect], art A-VIII, § A8.3.;[2] art A-IX, § A9.1;[3] art VIII, § 8.10 [b].)[4]

There is no contention that these contractual provisions have not been complied with. In the event that an employee is required to forego the contractual rest period, overtime and penalty payments are provided for in the contract.

The Commissioner ordered ABC to provide an additional meal period of at least 20 minutes between the hours of

---

**2.** That section provides: "In the event an employee remains on duty for a period longer than ten (10) hours a second meal period of thirty (30) minutes shall be scheduled not earlier than four (4) elapsed hours after the end of the first meal period [section 9.1 of article IX provides that a meal period not to exceed one hour shall be taken as near the middle of the shift as possible] and not later than his twelfth (12th) hour of tour and the Company shall pay to such employee his rate of pay at time and one half for such time taken off for the second meal period. An additional period of thirty (30) minutes shall be scheduled after each four (4) hours of work beyond the twelfth (12th) hour and shall be paid at time and one half."

**3.** "ARTICLE A-IX

"Rest Periods

"Section A9.1

"It is the intention of the Company to continue the practice of granting a reasonable rest period during television program rehearsals or a reasonable relief period for each job function during an extended television broadcast such as a football game whenever possible to do so."

**4.** "Section 8.10 — Excessive Assignments * * *

"(b) The Company shall refrain from assigning employees for continuous excessive hours of work resulting in excessive mental and physical strain. In the event the Company does so assign employees, it is agreed that the matter shall be subject to the grievance procedure, and the Company shall give such grievance its immediate attention."

5:00 and 7:00 P.M. to all employees working a shift that started before noon and continued past 7:00 P.M. The IBA modified the Commissioner's order to apply only to employees *scheduled* to work a shift beginning before noon and continuing past 7:00 P.M.

In annulling the notice and order, Special Term held that the employees had waived their rights under the statute by entering into the collective bargaining agreement negotiated by NABET on their behalf. For the proposition that the statute was susceptible of waiver, Special Term relied on *Matter of Cruz (Amsterdam Nursing Home Corp. — Ross)* (79 AD2d 1081, affd 55 NY2d 918). In that case, the Court of Appeals, in construing subdivision 4 of section 162 of the Labor Law, stated that there was nothing in the statute which precluded a waiver of its benefit by an employee (*supra,* at p 920). As Special Term stated, if an individual employee can waive the statutory benefit, then surely a group of employees also may waive the benefit through their exclusive bargaining agent.

The waiver of the specific meal period provided for in the statute does not contravene the public policy expressed in subdivision 3 of section 162 of the Labor Law. The provisions of the collective bargaining agreement noted above amply safeguard the health and well-being of ABC's technical employees. Nothing in the legislative history indicates that the specific period between 5:00 and 7:00 P.M. was of any concern. This is a peak period in the operations of the ABC network as it prepares for the evening's news broadcast. The waiver here effected is not a relinquishment of the statutorily required rest periods, but merely a readjustment of the scheduling of such periods to meet the operational needs of the industry.

The provision of law involved was originally enacted in 1909[5] at a time when the industrial revolution made protective measures for working people a necessity. One does not today monitor a trip to the moon with a 5:00 to 7:00 P.M. meal period. The provisions which the parties them-

---

5. See historical note to section 162 of the Labor Law (McKinney's Cons Laws of NY, Book 30, pp 91-92).

selves have evolved by contract are reasonable and more than satisfy the needs of the employees consistent with good business practices. Superimposing an outmoded schedule serves no Labor Law purpose.

Accordingly, the judgment of the Supreme Court, New York County (McQUILLAN, J.), entered November 10, 1982, which annulled a decision of appellant Industrial Board of Appeals dated January 28, 1982, should be affirmed, without costs.

ASCH, J. (dissenting). In 1980, respondent-appellant, the Industrial Commissioner of the Department of Labor of the State of New York, issued a notice of Labor Law violation. It stated that ABC had violated subdivision 3 of section 162 of the Labor Law. That section provides that "[e]very person employed for a period or shift starting before noon and continuing later than seven o'clock in the evening shall be allowed an additional meal period of at least twenty minutes between five and seven o'clock in the evening." ABC sought review of the validity of the commissioner's determination, by the respondent-appellant Industrial Board of Appeals.

The petition challenged the statute's application to the telecommunications industry and to skilled technical employees and couriers not engaged in manual labor. It alternatively challenged the statute's enforcement on the grounds that the "meal period" provisions of the applicable collective bargaining agreement effectively waived the employees' right to a meal period under subdivision 3 of section 162. ABC further argued that in any event these contractual provisions "substantially complied" with the statute.

At a hearing held by the board, it was shown that many employees in courier and technical services were required to work shifts commencing before noon and lasting past seven in the evening. These workers were not afforded the second or additional meal period between 5:00 P.M. and 7:00 P.M. as provided under subdivision 3 of section 162. The contract provided that workers employed on a shift exceeding 10 hours were entitled to a second meal period of 30 minutes. However, those workers employed on shifts up

to but not exceeding 10 hours were not entitled to such second meal period. The agreement provided for "penalty payments", in addition to overtime pay, for employees who are unable to take time for a second meal period.

After this hearing, the appellant Industrial Board of Appeals unanimously affirmed appellant commissioner's notice of Labor Law violation of and order to comply with subdivision 3 of section 162. In so affirming, the board found that ABC had acknowledged that "the affected employee may not receive the required meal period or even a sufficient opportunity to stop working for any appreciable period" and further it determined "[t]he overwhelming evidence presented herein establishes that the subject employees are not regularly provided an additional meal period, as that term is defined under the statute or in the labor contract." Specifically, the board decided that the requirements of subdivision 3 of section 162 applied to persons employed in the telecommunications industry, an industry not exempted from coverage by the Labor Law. It held also that the "meal period" provisions of the collective bargaining contract neither acted to waive the statutory requirements nor, in the alternative, to substantially comply with them. However, the board modified the commissioner's order to apply only to those workers actually "scheduled" to work the period described in subdivision 3 of section 162 of the Labor Law since it ruled that the provision covered only those workers.

Respondent ABC then commenced this judicial proceeding seeking vacatur of the board's determination. The petition raised the same arguments asserted before the board and set forth *supra.* Special Term annulled the order of the board of appeals holding, *inter alia,* "[b]ecause I agree with [ABC] that the subject employees waived the statutory benefit of Labor Law section 162 subd. 3 because of the labor contracts negotiated on their behalf by their exclusive collective bargaining agents, I need not and do not address petitioner's other arguments."

Special Term based its holding first upon its legal determination that an individual employee could "waive" the statutory meal period of subdivision 3 of section 162 citing, in support, *Matter of Cruz (Amsterdam Nursing Home*

*Corp. — Ross)* (79 AD2d 1081) which concerned subdivision 4 of section 162. Special Term then concluded if an individual employee could waive the statutory meal period, then the statute could be collectively waived by ABC's employees.

The majority of this court is in agreement with Special Term, and would affirm. I disagree with the reasoning relied on by Special Term and hence with its conclusions, and would reverse.

Subdivision 3 of section 162 of the Labor Law is a provision of article 5 of the New York State Labor Law. Like other provisions contained in article 5, it is a health measure designed to protect workers from weakness and exhaustion which could result in harm to themselves, their co-workers and others (see, e.g., *People v Klinck Packing Co., 214 NY 121*). Subdivision 3 of section 162 is a "police power" measure which is part of the fundamental public policy underlying the Labor Law and thus must be liberally construed (*Koenig v Patrick Constr. Corp., 298 NY 313, 319*).

"[A] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such a waiver or release contravenes the statutory policy." (*Brooklyn Bank v O'Neil, 324 US 697, 704.*) This principle has long been recognized in this State (*Kassner & Co. v City of New York, 46 NY2d 544, 550-551;* 21 NY Jur, Waiver, § 91, pp 128-129). Subdivision 3 of section 162, enacted to protect the health and safety of workers and others, cannot be waived by the parties. The Legislature, by its enactment, has declared it to be the State public policy and thus contrary private agreements are preempted (*Home Bldg. & Loan Assn. v Blaisdell, 290 US 398, 435-436*).

As stated by Mr. Justice HOLMES, the public interest, or "public policy", is "the interest of others than the parties", which interest cannot be at the mercy of the parties alone (*Beasley v Texas & Pacific Ry. Co., 191 US 492, 498*).

*Matter of Cruz (Amsterdam Nursing Home Corp. — Ross)* (*supra*), relied on by Special Term in its finding of "waiver", involved subdivision 4 of section 162 of the Labor

Law, which provides that persons employed in mercantile or other establishments on shifts in excess of six hours, commencing between 1:00 P.M. and 6:00 A.M., must be allowed a 45-minute meal period midway between the beginning and end of the shift. The employer in *Cruz* had a rule requiring employees to eat their meals on the work premises. An employee was fired when he left the premises to take the statutory meal break. He thereupon filed a claim for unemployment benefits and was upheld by the Unemployment Insurance Appeals Board which held that the company's "situs" rule violated subdivision 4 of section 162 of the Labor Law. The Appellate Division, Third Department, reversed, holding that "[t]he quoted provision was clearly designed to insure that employees would receive an opportunity to consume food whenever their schedule called for more than six hours of work * * * no legislative history has been called to our attention indicating that the situs of the meal was of any particular concern." (*Matter of Cruz [Amsterdam Nursing Home Corp. — Ross]*, *supra,* at p 1082.) *Cruz* did not hold that an employee may waive the benefit of a meal period. It is limited to a determination that an employer could reasonably require an employee to take his statutory meal break on the work premises, since there was no prohibition upon such a restriction in the statute. Thus *Cruz* is, in effect, irrelevant to the issue presented herein.

ABC's and Special Term's reliance upon the collective bargaining agreement is equally erroneous. The United States Supreme Court has consistently held that the substantive provisions of labor legislation, e.g., the Fair Labor Standards Act (FLSA) (US Code, tit 29, § 201 *et seq.*) cannot be waived or superseded by the provisions of a collective bargaining agreement. A major purpose of the FLSA is to protect the health of workers by eliminating physical and mental strain occasioned by long hours of labor (*Bay Ridge Co. v Aaron*, 334 US 446, 460, 470). This, as discussed *supra,* is the conceded purpose of subdivision 3 of section 162 of the Labor Law.

In *Jewell Ridge Corp. v Local* (325 US 161) the Supreme Court ruled that a "travel time" provision in the FLSA could not be waived by a collective bargaining contract

provision to the contrary. The court, noting that the union there was strong, as is the union in this case, and the workers well paid, as are the employees of ABC, held "employees are not to be deprived of the benefits of the Act simply because they are well paid or because they are represented by strong bargaining agents" (*Jewell Ridge Corp. v Local, supra,* at p 167). In *Barrentine v Arkansas-Best Frgt. System* (450 US 728) the Supreme Court held that a worker's submission of a wage dispute to a grievance committee established by the collective bargaining agreement could not, as a matter of law, waive his right under the FLSA to commence a statutory action based on the same wage dispute. The court acknowledging the deference ordinarily due collective bargaining agreements as expressed in the National Labor Relations Act (US Code, tit 29, § 151 *et seq.*) nevertheless held that the contract must be subordinated to the "rights arising out of a statute designed to provide minimum substantive guarantees to individual workers" (*Barrentine v Arkansas-Best Frgt. System, supra,* at p 737). Waiver was therefore impermissible since the contract could not be allowed to nullify statutory rights with respect to worker health and safety.

Similarly, the New York State Labor Law, like the FLSA, creates minimum substantive rights for the protection of each individual employee's health and safety which cannot be waived by a collective bargaining agreement. Even assuming the provisions of subdivision 3 of section 162 *were* waivable, the Court of Appeals has held that even where waiver of a statutory provision is permitted, it will not be sanctioned unless "the explicit language of the parties' agreement unquestionably manifests [the parties'] intent to effect such a change" (*Matter of Board of Educ. v Nyquist,* 48 NY2d 97, 105). The NABET-ABC agreement makes no reference to subdivision 3 of section 162 in its "meal period" provision and there is no proof that the statute was even a subject of negotiation. Thus, the contract cannot be said to "explicitly" or "unquestionably" manifest an intent of the affected workers to waive the protection of subdivision 3 of section 162.

Special Term did not address the application of the Labor Law to the telecommunications industry, or whether ABC

had "substantially complied" with the provisions of subdivision 3 of section 162, since it explicitly dealt only with the issue of waiver. Both of these arguments, however, were made at the hearing before the Industrial Board of Appeals and rejected by it. These findings by the board are entitled to great weight by this court in construing the statute (*Ferraiolo v O'Dwyer,* 302 NY 371).

The board found and the record amply demonstrated that conditions occasionally develop when certain employees of ABC receive no appreciable opportunity to eat while working. This situation is anticipated and comprehended under the NABET contract. No such provision is included in the statute. Accordingly, there is no merit to ABC's contention that the contract provisions relating to meal periods "substantially complied" with the statute.

Moreover, ABC's claim that technical employees engaged in the telecommunications industry are excluded from the statutory requirements of the Labor Law is also without merit. ABC sets forth a very complete and detailed history of the New York Labor Law designed to show that historically it was intended to cover "only" mechanics, working men, laborers, women and children. However, "even if the legislative history of the statute were as [ABC] contends our conclusion would in no way be affected since the proposed construction of section [162, subdivision 3] contravenes the mandate and the express language of the statute itself * * * This court should not ignore the words of a statute, clear on its face, to reach a contrary result through judicial interpretation" (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 596-597; matter in brackets added). Subdivision 3 of section 162 of the Labor Law applies by its express language to "[e]*very* person". (Emphasis added.) Thus, the board's determination was neither irrational, unreasonable, nor inconsistent with the statute and should be upheld by this court (*Matter of Fineway Supermarkets v State Liq. Auth.,* 48 NY2d 464).

Historically, the American free enterprise system took sustenance from the idea that by permitting the parties to freely negotiate their contracts, they could fix in advance the economic risks and benefits of their relationship. The courts, for the most part, supported this notion of contract.

(See, e.g., *Coppage v Kansas,* 236 US 1, 17; *Morehead v Tipaldo,* 298 US 587.) Largely ignored was the social and economic reality that "the butcher, the baker and candlestick maker", in fact, the overwhelming masses of workers, could not bargain on terms of equality with their employers. As early as 1937, the Supreme Court of the United States, in a critical trinity of cases, had already turned its back on these established ideas of sanctity of contract when it supported the New Deal legislation. (*West Coast Hotel v Parrish,* 300 US 379; *Labor Bd. v Jones & Laughlin,* 301 US 1; *Steward Mach. Co. v Davis,* 301 US 548.)

Continuing changes in the nature of industrial relationships have further eroded accepted dogma of contract law so that individual bargaining has been largely replaced by collective, and the State has substituted many of its own social welfare terms and conditions for those upon which the parties might be willing to agree if they had been left alone.

Accordingly, the judgment of the Supreme Court, New York County (McQUILLAN, J.), entered November 10, 1982, which annulled a decision of appellant Industrial Board of Appeals dated January 28, 1982, should be reversed, on the law and facts, without costs, and the determination of the Industrial Board of Appeals reinstated.

MURPHY, P. J., and LYNCH, J., concur with KUPFERMAN, J.; SULLIVAN and ASCH, JJ., dissent in an opinion by ASCH, J.

Judgment, Supreme Court, New York County, entered on November 10, 1982, affirmed, without costs and without disbursements.